# EDMUND CURTIS

*v.*

# GEORGE BAUGH.

1. MEASURE OF DAMAGES—*on contract to indemnify vendor of land for depreciation on removal of timber.* The owner of land, a portion of which was timber, sold it, and took a deed of trust upon it to secure the purchase money. The purchaser quit-claimed the land to his father, who, with a view to raise money to pay the notes given by his son for the purchase money, proposed to sell the timber without the land, and, for that purpose, had the timbered land platted and advertised for sale in lots. On the day of sale, the vendor and holder of the deed of trust objected, but the father of the purchaser, in order to induce him to permit the sale to proceed, gave him a deed of trust on his farm, for $3000, to indemnify him against loss by the sale and removal of the timber. Thereupon, the sale proceeded, and the timber on a portion of the land was sold for all it was worth, and afterwards the vendor enjoined the further sale of the timber. The notes given for the purchase of the land were not paid, and the land was all sold, under the deed of trust, for nearly $5000 less than the amount of the indebtedness. On a bill filed to ascertain the amount of damages the holder of the deed of trust had sustained by the removal of the timber, and to subject the land of the father of the purchaser to sale under the deed of trust executed by him, it was *held,* that the proper measure of damages was the price for which the timber was sold.

2. In such case, the fact that the father gave his note for $3000, due in two years from date, with ten per cent interest, and executed the deed of trust to secure it, would not entitle the holder to collect the amount of the note. It having been given for no indebtedness due from the maker to the payee, but solely for the purpose of indemnifying him against loss by the sale of the timber, the only consideration supporting the transaction was the loss sustained, not on the sale of the land, but the depreciation in its value by the removal of the timber therefrom, and the amount of such depreciation would be the measure of recovery.

APPEAL from the Circuit Court of Ogle county; the Hon. W. W. HEATON, Judge, presiding.

Messrs. BUSHNELL, BULL & GILMAN, for the appellant.

Mr. WILLIAM BARGE, and Mr. SHERWOOD DIXON, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

In March, 1869, appellee sold to Athe R. Curtis, a son of appellant, a half section of land, for the sum of $11,840, of which he paid $3000 at the time, leaving a balance of $8840, for which sum notes were given, falling due at different dates, and a trust deed given on the lands to secure the purchase money. Between 150 and 160 acres of this land was timbered, and Athe quit-claimed the land to his father, who proposed to sell the timber without the land, to provide means to meet his son's notes. With a view to such a sale, he had the timber land surveyed and platted and advertised for sale, in lots, at auction.

On the day of sale, appellee objected, but appellant, to enable it to proceed, gave to appellee a trust deed on his own farm; to the amount of $3000, to indemnify him against loss by the sale and removal of the timber thus advertised for sale. Appellee then announced his consent that the sale might proceed. On that and a subsequent day to which the sale was adjourned, there was sold the timber on 83 acres, at an average of $26.52½ per acre, making, in the aggregate, $2201.16; but appellee subsequently enjoined the further sale of the timber.

After Athe's trust deed fell due, and no portion of it being paid, appellee sold the land described in the deed for $6278 over expenses, leaving a balance due him of $4936, or near that sum. Appellee thereupon filed this bill to ascertain the amount of damage he had sustained, and to subject appellant's land described in his trust deed to sale, for the payment of the amount thus found. On a hearing, the court below found that appellee had sustained damage to the amount of $3500, and decreed the sale of a sufficient amount of the land to pay the same, from which defendant appeals.

It is true, in this case, that appellant gave his note to appellee for $3000, drawing ten per cent interest, and due in two years, and executed the trust deed to secure its payment;

but it is also true that appellant, at the time, owed appellee nothing. They were executed as collateral security to the indebtedness of Athe R. Curtis, and for the sole purpose of indemnifying appellee from loss by the sale of timber from the lands mortgaged by Athe to appellee. Then, what should be the measure of the damages in foreclosing this deed of trust? Is it the amount of the note and interest, or is it the actual damage sustained by appellee? Manifestly the latter. Suppose appellant had sold none of the timber, would any one contend that appellee could have foreclosed for anything? Surely not, because there would have been a failure or want of consideration to support the transaction. Or suppose but an acre of the timber had been sold, could it be held that appellant would have become liable to pay the whole note, with the accruing interest? Clearly not, because it would have been contrary to the intention of the parties, which was not to create a penalty, but to indemnify against loss. Hence the consideration supporting the transaction was the loss sustained by appellee, not on the sale of the lands embraced in Athe's deed of trust, but the depreciation in its value by the removal of the timber from that land. There can be no question that such was the intention of the parties.

Had appellant given a penal bond in the same sum to indemnify appellee against loss by the removal of this timber, what would have been the measure of damages? Obviously the loss that was sustained by reason of its removal, and not the deficiency in their sale to meet the indebtedness of Athe; and the present transaction, although in a different form, only in substance amounts to such a bond of indemnity, and the measure of damages should be the same.

Then, what is the true measure of damages in this case? Is it the sum of money for which the timber sold, or was it what the witnesses say the land was worth with the timber standing, after deducting the value of the land? Even if the latter proposition were adopted, still, in the great conflict of evidence, it is impossible to say that there was any loss to

appellee beyond what the timber actually sold for at the sale. The evidence varies largely as to the value of the land without the timber, as it does with the timber standing. Some of appellee's witnesses fix the value per acre, with the timber, at from $55 to $60, and after it was removed, at from $7 to $10 per acre. On the other hand, witnesses fix the value, with the timber, at from $30 to $40 per acre, and without it, at from $10 to $12; and they generally place the value of the timber alone at from $25 to $30 per acre.

In this conflict of evidence, it would seem that the timber sold for all that it was worth. It appears that at the first sale there were near a hundred persons present, and at the latter about sixty, and the bidding active and spirited; nor does it appear that there was anything unfair in the mode of conducting the sale. As a general rule, the price brought at such sales is regarded as the value of the article sold, and it requires strong and satisfactory evidence to overcome it, which has not, we think, been produced in this case.

Nor is it shown that the sale of this timber depreciated the balance of the mortgaged premises; nor can we see how it could. They seem to be valuable for the purposes of cultivation, and if so, then all they require is only sufficient timber to furnish fuel and repairs to the farm, and there is no evidence showing that enough was not left to answer these purposes: and there is nothing to show that the land denuded of the timber would not be valuable, in connection with the farm land, for purposes of pasturage, to a large, if not an equal, extent, as had it remained timber.

All the evidence considered, we are of opinion the proper measure of damages is the price for which the timber was sold, and that all appellant was required to pay above and beyond that sum was erroneous, and that the decree must be reversed and the cause remanded.

*Decree reversed.*